UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff(s),

v.

YANNI TASSEV (a.k.a. IANI TASSEV),

Defendant(s).

Case No.2:24-CV-1120  JCM (NJK)

ORDER

Presently before the court is plaintiff Security and Exchange Commission's motion for default judgment.  (ECF No. 17).

**I.     Background**

The Security and Exchange Commission ("SEC") filed this enforcement action against defendant Yanni Tassev, alleging that he used his investor relations position at Boxabl, Inc., a Las Vegas-based manufacturer of modular homes, to defraud seven would-be investors out of approximately $1,595,000.  (ECF No. 1 ¶¶ 2, 11–13).  According to the complaint, Tassev offered to sell the individuals discounted securities at Boxabl even though he did not own or have access to any securities in the business.  (*Id.* ¶ 2).  Tassev instructed investors to deposit their investment funds with Sigmas Power, a company he solely controlled.  (*Id.* ¶¶ 10, 15, 17).  He then absconded with the money, sending the funds to other accounts he controlled or spending them on gambling, lawyers, or other expenses.  (*Id.* ¶¶ 2, 20).

. . .

The SEC filed this action on June 17, 2024, and in 2025 served Tassev pursuant to the Hague Convention on Service of Judicial and Extrajudicial Documents in his home country of Bulgaria.  (ECF Nos. 7, 9, 11).  After three attempts at personal service, the SEC timely served Tassev on July 22, 2025, in accordance with Article 47, paragraph 5 of the Bulgarian Code of Civil Procedure, and this court's deadline.  (ECF Nos. 6, 7, 9, 11); (ECF No. 7-1 ¶¶ 5–10).  Tassev was required to serve and file his response to the complaint by August 12, 2025.  *See* Fed. R. Civ. P. 12(a).  To date, Tassev has not appeared in this case.

## II.      Legal Standard

To obtain default judgment a party must follow a two-step process governed by Federal Rule of Civil Procedure 55.  *See Eitel v. McCool*, 782 1470, 1471 (9th Cir. 1986).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Rule 55(b)(2) provides that "a court may enter a default judgment after the party seeking default applies to the clerk of the court as required by subsection (a) of this rule." Fed. R. Civ. P. 55(b)(2).

The choice of whether to enter a default judgment lies within the discretion of the trial court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  *Eitel v. McCool* laid out the following factors that a district court might consider when exercising its discretion as to the entry of default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of a plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  782 F.2d 1470, 1471–72 (9th Cir. 1896).  "The general rule of

law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. U.S.*, 323 U.S. 1, 12 (1944)).

**III.    Discussion**

On December 18, 2025, the SEC obtained the clerk's entry of default against defendant Tassev. (ECF No. 13). On April 24, 2026, in accordance with Rule 55(b), the SEC filed the instant motion for default judgment. (ECF No. 17). It seeks permanent injunctive relief, disgorgement of the ill-gotten gains, and civil penalties.

A. *Eitel* Factors

The *Eitel* factors weigh in favor of granting default judgment.

*1.   Possibility of Prejudice*

When a defendant refuses to appear and defend the claims against it, this non-appearance "prejudices [the party's] ability to pursue its claims on the merits and seek recovery of damages." *See Servfaces Gmbh v. Truong*, No. 2:19-cv-1906, 2020 U.S. Dist. LEXIS 28692, at *6 (D. Nev. Feb. 20, 2020). Here, the SEC would be prejudiced if default judgment were not granted as it would have no other recourse against Tassev.

*2.   Merits of the substantive claim and sufficiency of the complaint*

"The second and third *Eitel* factors favor default judgment if the plaintiff makes enough factual allegations to state a claim upon which relief can be granted, in accordance with Rule 8(a)." *Nike, Inc. v. Fujian Jialaimeng Shoes Co.*, No. 2:17-cv-516, 2019 U.S. Dist. 55583, at *5 (D. Nev. Mar. 6, 2019) (citing *Eitel*, 782 F.2d at 1471; *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).

. . .

To state a claim a claim under Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(2), and Section 10(b) of the Exchange Act, 15 USC § 78j(b) and Rule 10b-5(b) thereunder, 17 CFR § 240.10b-5(b), the SEC must prove: (1) misrepresentations or omissions by the defendant (2) concerning a material fact (3) in connection with the purchase or sale of a security. *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010); *see also SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1364 (9th Cir. 1993).

Additionally, Sections 17(a)(1) and (3) of the Securities Act and Rules 10b-5(a) and (c) of the Exchange Act provide for "scheme liability," which can be proven by demonstrating that the defendant employed "(1) a device or scheme to defraud someone (2) in connection with the purchase or sale of a security (3) with scienter and (4) by means of interstate commerce." *SEC v. Alpine Securities Corp.*, No. 2:22-cv-01279, 2025 U.S. Dist. LEXIS 193431, at *20–*21 (D. Nev. Sept. 30, 2025). Concerning the first element, the SEC must demonstrate that the defendant "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds by Simpson v. Homestore.com Inc.*, 519 F.3d 1041 (9th Cir. 2008).

Scienter is a required element for violations of Section 17(a)(1) of the Securities Act and Rule 10b(5) of the Exchange Act. *Aaron v. SEC*, 446 U.S. 680, 701–02 (1980). Only negligence is required for violations of Sections 17(a) and (3) of the Securities Act. *Id.* Finally, certain jurisdictional elements must be satisfied. *See Rana Research, Inc.*, 8 F.3d at 1364.

Here, the well-pleaded allegations in the complaint establish that Tassev violated various anti-fraud provisions of the Securities Act and the Exchange Act.[1] The SEC adequately alleges

---

[1] The facts laid out here are non-exhaustive of those considered by the court in determining that the SEC's

that Tassev obtained at least $1,595,000 from seven investors through the offer and sale of securities in Boxabl that Tassev did not own or could not deliver. (ECF No. 1 ¶¶ 2, 16, 20). He falsely stated that he owned these shares or options of Boxabl stock to induce the individuals to give him money, which he then used for personal purposes. (*Id.* ¶¶ 13–19). In facilitating this scheme, Tassev allegedly disseminated false literature to potential investors, prepared and entered into false transfer and assignment agreements, and falsified Boxabl investor records. (ECF No. 1, ¶¶ 18–19). These factual allegations, along with the others laid out in the complaint, establish that Tassev acted with the requisite scienter.

Accordingly, the second and third Eitel factors weigh in favor of entry of default judgment.

### 3. *Sum of money at stake in the action*

Default judgment is warranted if the money at stake in the action is proportionate to the seriousness of the conduct. *Servfaces Gmbh v. Truong*, 2020 U.S. Dist. LEXIS 28692, at *6 (D. Nev. Feb. 20, 2020).

The SEC seeks imposition of a permanent injunction, disgorgement, and a civil penalty. The first two requests for relief are equitable and thus not a form of monetary damages. *See SEC v. Rind*, 991 F.2d 1486, 1492–93 (9th Cir. 1993) (explaining that disgorgement is a form of injunctive relief); *PepsiCo., Inc.,* 238 F. Supp. 2d at 1177. The SEC also seeks a $1,595,000 civil penalty, which is reflective of Tassev's gross pecuniary gain from his misconduct. Considering Tassev's alleged actions and the substantial amount of investor money he misappropriated, the court finds that this factor weighs in favor of granting default judgment.

### 4. *Possibility of a dispute concerning material facts*

The fifth *Eitel* factor weighs against default judgment where there is a possibility of dispute

---

allegations were well-pled.

about material facts.  782 F.2d at 1471–72.  "Because this court takes all allegations in a well-pleaded complaint as true after the clerk enters default, there is no likelihood that any genuine issue of material fact exists" here.  *See Nike*, 2019 U.S. Dist. 55583, at \*9.  Thus, this factor weighs in favor of default judgment.

### 5.  *Whether the default was due to excusable neglect*

The sixth *Eitel* factor favors default judgment if "the defendant has been properly served or plaintiff shows that defendant is aware of the lawsuit and failed to answer."  *Thriven Fin. v. Bloomquist*, 2:17-cv-1555, 2018 U.S. Dist. LEXIS 111659, at \*9 (D. Nev. July 3, 2018) (citing *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987)).

There is little doubt in the court's mind that Tassev has been served and is aware of this case.  From the outset, the SEC has attempted to communicate to Tassev the pendency of this litigation.  SEC staff sent a Wells Notice to Tassev's email advising him that they were recommending the commission file an enforcement action against him.  (ECF No. 17, Ex. 1 ¶ 8).

When the SEC first attempted in-person service at Tassev's registered Bulgarian address, the process server spoke with his father.  (ECF No. 17, Ex. C); (ECF No. 17 at 6).  Additionally, the SEC posted sufficient notification at his residence attempting to inform him of the action, constituting service of process under accordance with Article 47, paragraph 5 of the Bulgarian Code of Civil Procedure.  (ECF No. 11, Exs. 2, 3).  There is also extensive publicly available information about this two-year-old case online.  (ECF No. 17, Ex. 1 ¶ 9).

Thus, Tassev's failure to appear in this case cannot be chalked up to "excusable neglect." This factor weighs in favor of granting default judgment.

### 6.  *Policy favoring decisions on the merits*

Courts strongly favor deciding cases on the merits.  However, where a defendant fails to

appear or respond, such a decision is not possible.  "Denying default judgment on this factor in this context would preclude default judgment whenever a defendant fails entirely to participate in a lawsuit."  *Car-Freshner Corp. v. Victory-2000 EOOD*, No. 2:14-cv-1471, 2016 U.S. Dist. LEXIS 173663, at *24 (D. Nev. Dec. 14, 2016).  Thus, this factor does not weigh against the SEC.

Considering the foregoing, the court grants default judgment in favor of the SEC and against Tassev.

B.  Remedies

Next, the court considers the appropriate relief to grant the SEC (and, by extension, the investors).  In a default judgment, a plaintiff may only be granted the relief prayed for in the complaint.  Fed. R. Civ. P. 54(c).  In its complaint, the SEC seeks a judgment permanently enjoining Tassev from (a) future violations of the Securities Act, Exchange Act, and Rule 10b-5 and (b) from participating in the issuance, offer, purchase, or sale of securities except for trading in his personal accounts.  (ECF No. 1, Prayer for Relief I and II).  The SEC also seeks a civil penalty and disgorgement of Tassev's gains that were the by-product of his alleged conduct.  (*Id.*).

1.  *Injunctive Relief*

The Securities Act and Exchange Act both provide for the entry of a permanent injunction. 15 U.S.C. §§ 77t(b), 78u(d)(1).  To obtain a permanent injunction, the SEC has the burden of showing that there is a reasonable likelihood of future violations of securities laws.  *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).

In considering whether to grant permanent injunctive relief, courts consider (1) the degree of scienter, (2) the isolated or recurrent nature of the infraction, (3) the defendant's recognition of the wrongful nature of his conduct, (4) the likelihood, because of the defendant's occupation, that future violations might occur, and (5) the sincerity of his assurances against future violations.  *SEC*

*v. Murphy*, 50 F.4th 832, 841–42 (9th Cir. 2022) [hereinafter, *Murphy II*].

On one hand, Tassev acted with a high degree of scienter by abusing his role as Vice President of Investor Relations at Boxabl to convince seven individuals to send money to his company's bank account under the guise that it would be used to purchase shares or options of Boxabl securities, only to turn around and misappropriate that money for personal use. His conduct resulted in significant financial loss. He has failed to appear in this case and recognize the wrongfulness of his conduct, and, therefore, no assurances against future violations have been made.

On the other hand, it does not appear that he has been involved with other securities violations. Moreover, Tassev is no longer employed by Boxabl—the very entity he used to perpetuate his fraudulent scheme—and he has left the country for his home state of Bulgaria. (ECF No. 1 ¶ 17); (ECF No. 3, Ex. 1 ¶¶ 4–5).

Pursuant to an order of removal by an immigration judge, any attempted re-entries into the United States would result in his detention by immigration authorities. (ECF No. 3, Ex. 1 ¶ 5); (ECF No. 17 at 22–23). It is unlikely that Tassev will find another position in investor relations considering the widely publicized nature of this action and, even if he did, it would be in a foreign country with foreign residents and unlikely to implicate securities in the United States as opposed to his resident country.

Considering Tassev now lives abroad, cannot return without risking detention, and is no longer employed by Boxabl, the SEC has not met its burden to prove that a similar future violation is likely to occur. Accordingly, the court denies SEC's request for a permanent injunction against Tassev.

//

*2. Disgorgement*

This court has the authority to order disgorgement under Sections 21(d)(3), (5) and (7) of the Exchange Act, so long as it does not "exceed a wrongdoer's net profits." *Liu v. SEC*, 591 U.S. 71, 75 (2020); *see also SEC v. Janus Spectrum LLC*, 2020 U.S. App. LEXIS 20710, at \*3 (9th Cir. July 1, 2020); *SEC v. Wahi*, 2024 U.S. Dist. LEXIS 36788, at \*26 (W.D. Wash. Mar. 1, 2024) (noting that the Exchange Act authorizes disgorgement as a distinct remedy).

Where disgorgement is an available remedy, the court has broad discretion in determining whether to order disgorgement and in what amount. *See SEC v. Barry*, No. 2:15-cv-02563, 2023 U.S. Dist. LEXIS 120200, at \*6–\*7 (C.D. Cal. July 12, 2023) (citing *SEC v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014)). "Disgorgement need be 'only a reasonable approximation of profits causally connected to the violation.'" *Platforms Wireless Int'l Corp.*, 617 F.3d at 1096 (quoting *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998)); *SEC v. Yang*, 824 Fed. App'x 445, 447 (9th Cir. Aug. 6, 2020) (applying the standard after *Liu*). The SEC's requested disgorgement satisfies these criteria.

Here, the SEC submitted evidence that Tassev's profits from the scheme were approximately $1,595,000. (ECF No. 17, Ex. A ¶ 6). This is the amount that he sent to his Sigmas Power bank account from the investors and subsequently misappropriated for personal use. (*Id.*). Recovery of this amount would compensate Tassev's victims.

Additionally, the SEC requests payment of prejudgment interest on the disgorgement amount. Disgorgement orders usually include prejudgment interest. *See SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1190 (D. Nev. 2009). Courts order prejudgment interest to prevent defendants from potentially profiting as a result of their illegal activity. *Id.*

. . .

The court is inclined to award prejudgment interest on Tassev's ill-gotten gains, calculated at the IRS underpayment rate. (ECF No. 17, Ex. 1) (prejudgment interest report). *See Platforms Wireless Int'l Corp.*, 617 F.3d at 1099; *SEC v. Langemeier*, 2025 U.S. Dist. LEXIS 38056, at *12–*13 (D. Nev. Mar. 4, 2025) (accepting calculation of prejudgment interest based on tax-underpayment rate provided for in 26 U.S.C. § 6621).

The court grants the SEC's request for disgorgement in the amount of $1,595,000 and prejudgment interest at $404,180.

### 3. Civil Penalty

The SEC seeks imposition of a civil monetary penalty on Tassev. *See* 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). Civil penalties are a punishment intended to deter the wrongdoer from committing similar violations in the future. *Murphy II*, 50 F.4th at 847. Courts in the Ninth Circuit consider the *Murphy* factors to determine the proper penalty. *CMKM Diamonds, Inc.*, 635 F. Supp. at 1192. "A district court has discretion to impose civil penalties so long as the amount is within the statutory maximum." *Id.*

Penalties are assessed according to a three-tier system and are determined "by the court in light of the facts and circumstances" of the case. *See* §§ 77t(d)(2), 78u(d)(3)(B). Third-tier penalties are applicable to violations that (i) involved "fraud, deceit, manipulation, or reckless disregard" and (ii) the violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). Here, For each violation, the court may grant a penalty ranging between $100,000 and the gross amount of pecuniary gain resulting from the violation for each violation. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).

. . .

The SEC requests a third-tier civil penalty equal to Tassev's gross pecuniary gain. *See* §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). After weighing the *Murphy* factors, the court finds a more appropriate penalty of $100,000 per violation is warranted to deter future conduct. *See* §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii); *see also supra* Section III.B.1 (finding some *Murphy* factors in favor of SEC, but that it had not met its burden to grant an injunction). Considering that Tassev violated several securities laws and, importantly, defrauded seven investors, the court finds there to be seven violations. *See United States v. Barry*, 146 F.4th 1242, 1266 (9th Cir. 2025) (district court has discretion to rely on various proxies to determine the number of violations). Thus, the court imposes $700,000 in civil penalties.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff Security and Exchange Commission's motion for default judgment against defendant Yanni Tassev (ECF No. 17) be, and the same hereby is, GRANTED.

<u>A.</u>

IT IS ORDERED, ADJUDGED, AND DECREED that defendant is liable for disgorgement of $1,595,000, representing net profits gained as a result of the conduct alleged in the complaint, together with prejudgment interest thereon in the amount of $404,180 and civil penalties in the amount of $700,000 pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), for a total of $2,699,180 due to the Securities and Exchange Commission within 30 days after entry of this final judgment. Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request.

Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm.

Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this court; Yanni Tassev, aka Iani Tassev as a defendant in this action; and specifying that payment is made pursuant to this final judgment. Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to defendant.

The Commission may enforce the court's judgment for disgorgement and prejudgment interest by using all collection procedures authorized by law at any time after 30 days following entry of this final judgment.

The Commission may enforce the court's judgment for penalties by the use of all collection procedures authorized by law at any time after 30 days following entry of this final judgment. Defendant shall be liable to pay post judgment interest on any amounts due after 30 days of the entry of this final judgment pursuant to 28 U.S.C. § 1961. The Commission shall hold the funds, together with any interest and income earned thereon (collectively, the "Fund"), pending further order of the court.

. . .

The Commission WILL propose a plan to distribute the Fund subject to the court's approval.  Such a plan WILL provide that the Fund will be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002.  The court will retain jurisdiction over the administration of any distribution of the Fund, and the Fund shall only be disbursed pursuant to an order of the court.

Regardless of whether any such Fair Fund distribution is made, civil penalties pursuant to this judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes.  To preserve the deterrent effect of the civil penalty, defendant shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on defendant's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such compensatory damages award by the amount of any part of defendant's payment of a civil penalty in this action ("Penalty Offset").

If the court in any Related Investor Action grants such a Penalty Offset, defendant shall, within thirty (30) days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs.  Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this judgment.  For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the complaint in this action.

<u>B.</u>

Finally, IT IS ORDERED that this court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this final judgment.

### C.

The clerk of court is ordered to enter this final judgment.

DATED May 15, 2026.

_____
UNITED STATES DISTRICT JUDGE